UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WENDY HERRING,

                          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

<u>DECISION AND ORDER</u>

18-CV-0996L

**PRELIMINARY STATEMENT**

Plaintiff Wendy Herring ("Herring") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). (Dkt. # 1).

On May 8, 2015, Herring protectively filed an application for a period of disability and DIB, alleging disability beginning on April 1, 2014. (Tr. 10, 60).[1] On July 7, 2015, the Social Security Administration denied Herring's application, finding that she was not disabled. (Tr. 70-81). Herring requested and was granted a hearing before an administrative law judge. (Tr. 82-94). Administrative Law Judge Paul Georger (the "ALJ") conducted the hearing on August 4, 2017, at which Herring and vocational expert Joey Kilpatrick (the "VE") testified. (Tr. 26-59). In a decision dated November 8, 2017, the ALJ found that Herring was not disabled and was not entitled to benefits. (Tr. 10-25). On July 16, 2018, the Appeals Council denied

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 5) utilize the internal Bates-stamped pagination assigned by the parties.

Herring's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Herring then commenced this action on September 13, 2018. (Dkt. # 1).

Pending is Herring's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Commissioner's cross motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 6, 10). For the reasons set forth below, Herring's motion (Dkt. # 6) is denied, and the Commissioner's cross motion (Dkt. # 10), is granted. Herring's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

**DISCUSSION**

**I. Relevant Standards**

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

**II. The ALJ's Decision**

Here, the ALJ applied the sequential analysis. At step one, the ALJ found the Herring had not engaged in substantial gainful activity since April 1, 2014 – the alleged onset date. (Tr. 12). At step two, the ALJ determined that Herring had the following severe impairments: breast cancer, lumbar disc herniation and annular tear, cervical disc bulge, plantar fasciitis, anxiety, and depression. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations (the "Listings"). (Tr. 13-15).

The ALJ determined that Herring retained the RFC to perform light work, with limitations. (Tr. 15). Because of her pain, the ALJ determined that Herring required a sit/stand option for employment. (*Id.*). Herring also could occasionally: operate hand controls with her left and right hands, handle items with her left and right hands, finger and feel with her left and right hands, climb ramps, stairs, ladders, ropes, or scaffolds, and balance, stoop, kneel, crouch, and crawl. (*Id.*). Finally, Herring was limited to simple, routine tasks and simple work-related decisions. (*Id.*).

At step four, the ALJ found that Herring could not perform her past relevant work. (Tr. 20). Finally, at step five, the ALJ determined that based on the VE's testimony and Herring's age, education, work experience and RFC, Herring could perform other occupations existing in significant numbers in the national economy, specifically, shipping/receiving weigher (DOT # 222.387-074), bakery inspector (DOT # 524.687-022), and auto dealer account investigator (DOT # 241.367-038). (Tr. 21). Herring was thus not disabled under the Act. (Tr. 21-22).

### III. Herring's Contentions

Herring first contends that the ALJ erroneously weighed certain opinion evidence of record. (Dkt. # 6 at 3-21). Relatedly, according to Herring, the ALJ created an evidentiary gap and improperly rendered an RFC based on his lay interpretation of the medical evidence. Second, Herring maintains that the ALJ's credibility analysis was flawed. (*Id.* at 21-23).

### IV. Analysis

#### A. The ALJ Properly Evaluated the Medical Opinion Evidence

I turn first to Herring's argument regarding the ALJ's evaluation of the medical opinion evidence of record. Herring points to three specific opinions she contends the ALJ improperly weighed.[2] I will address each of these opinions below.

---

[2] The ALJ also weighed various other statements and opinions throughout the record regarding the functional impact of Herring's impairments, assigning all this evidence "little weight." (Tr. 20 (citing Tr. 265, 294, 305, 318, 766, 767)).

1. **Opinion of Treating Physician Dr. Irene Paulus**

First, the ALJ considered the May 11, 2016, opinion of Herring's treating physician at the VA, Dr. Irene Paulus ("Paulus"). (Tr. 19, 412-14).

Under the treating physician rule that was applicable at the time the ALJ's decision was rendered,[3] the opinion of a claimant's treating physician is entitled to controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The so-called "*Burgess* factors" include: (1) the frequency of examination and the length, nature, and extent of the treating relationship; (2) the supportability of the physician's opinion; (3) the consistency of the physician's opinion with the record as a whole; (4) the specialization of the physician; and (5) any other factors which support or contradict the medical opinion. *Gunter v. Comm'r of Soc. Sec.*, 361 Fed. Appx. 197, 199 (2d Cir. 2010) (summary order); *see also Estrella*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is not entitled to controlling weight[;] . . . [s]econd, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to

---

Herring does not challenge the ALJ's consideration of this evidence. Therefore, the Court's analysis is limited to the opinions specifically challenged by Herring in her moving brief.

[3] Changes to the Social Security Administration's regulations regarding the consideration of opinion evidence will eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c, 416.920c. For purposes of this appeal, however, the prior version of the regulations applies. *See, e.g.*, *Colon Medina v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 295, 301 (W.D.N.Y. 2018).

give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations and quotations omitted).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source's opinion is a "procedural error." *Estrella*, 925 F.3d at 96. However, if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed, [the court] will affirm." *Id.* (quotations omitted).

The ALJ examined Paulus's physical medical source statement in detail. (Tr. 19). In that statement, Paulus indicated that she had been treating Herring every three months since May 2014. (Tr. 412). Herring carried diagnoses of breast cancer, chronic back and neck pain, lymphedema, depression, diabetes, hyperlipidemia, and GERD, yet had a fair prognosis. (*Id.*). Herring exhibited symptoms of neck pain, lower back pain, and pain from her elbows to her thumbs, with a severity level of 3/10, and Paulus noted clinical findings and objective signs of "mild tenderness [in Herring's] neck and lower back." (*Id.*).

In Paulus's opinion, Herring could stand/walk for three hours and could sit for three hours out of an eight-hour workday. (Tr. 413). She also needed a job that permitted her to shift positions "at will" from sitting, standing, or walking. (*Id.*). Paulus opined that Herring could occasionally lift and carry ten pounds and under, but could never lift or carry 20 pounds or 50 pounds. (*Id.*). Paulus also opined that Herring could never twist or climb ladders, could rarely stoop/bend and crouch/squat, and could occasionally climb stairs. (*Id.*).

Herring also had, in Paulus's view, "significant limitations with reaching, handling or fingering." (Tr. 413). Specifically, Paulus opined that Herring could not use either of her hands

5

to grasp, turn, or twist objects, could use her fingers bilaterally for fine manipulations for 20% of an eight-hour workday, and could not use either of her arms for reaching. (*Id.*).

Paulus also indicated that Herring had psychological conditions that affected her physical condition, but that Herring could tolerate low stress jobs. (Tr. 414). In addition, Herring's impairments would occasionally interfere with the attention and concentration needed to perform simple work tasks, and that her impairments or treatment would likely cause Herring to be absent from work about two days per month. (*Id.*).

The ALJ assigned Paulus's opinion "partial weight." (Tr. 19). In doing so, the ALJ acknowledged that Paulus had "treated and observed" Herring, but that her opinion was "generally unsupported by [Paulus's] own clinical findings pertaining to [Herring], which were noted to only be 3/10 pain and mild tenderness in the neck and back." (*Id.*). The ALJ also noted the mental limitations opined by Paulus were "generally inconsistent with [Herring's] lack of distress, lack of emergency treatment, history of conservative mental health treatment, [and] lack of mental health deficits[.]" (*Id.*).

As for physical limitations, the ALJ stated the opinion was "generally inconsistent with the record as a whole, which document[ed] [Herring's] often noted lack of distress, 5/5 strength, normal gait despite reduced range of motion," which, in the ALJ's view, suggested Herring's ability to perform light work within the RFC and with a sit/stand option. (*Id.*). In addition, the opinion was inconsistent with the extent of Herring's daily activities, "including those that make use of the hands, such as driving, cooking, vacuuming, and carrying groceries." (*Id.*).

Moreover, the ALJ observed that many of the limitations opined by Paulus mirrored the subjective complaints Herring reported during a functional capacity test on April 18, 2016, to Marjorie Saleh ("Saleh"), D.P.T. (Tr. 19 (referencing Tr. 678-680)).

6

At that time, Herring presented to Saleh for testing that was "composed of both subjective information from [Herring] and objective testing the confines of a 1 hour evaluation." (Tr. 678). As for subjective information, Herring related her history of breast cancer with left meniscectomy in July 2015, bilateral carpal tunnel syndrome, chronic low back and neck pain, and "new onset" pain from elbows to her thumbs. (*Id.*). She described her low back pain as achy, constant, and rated its severity as 3/10. (*Id.*). Her elbow to thumb pain was new, and she described it as constant, achy and producing numbness, and rated its severity as a 3/10. (*Id.*).

The functional testing demonstrated that Herring used no cane to walk and that she ambulated "free of gait deviation." (Tr. 679). Herring "report[ed]" that she could sit for 2-3 hours in 30 minute increments throughout an eight-hour workday and that she could stand/walk for 2-3 hours in an eight-hour workday, and "relate[d]" that she needed to lie down "several times throughout her day" and that she needed to change positions often. (*Id.*).

Herring also was also able to lift a ten-pound box and carry it 100 feet, although she stated that her arms were numb after performing this test. (Tr. 679). She reported to Saleh that she could lift and carry her 15-pound dog with difficulty. (*Id.*). Herring could also make a full fist with her right hand, but was limited in her ability to do so with her left hand due to pain and lymphedema. (*Id.*). She refused to pick up a five-pound weight with one hand and refused to grip the weight her fingers. (*Id.*). Herring also refused to twist during the exam, indicating that she "does not twist." (Tr. 679). She could stoop and flex forward to approximately 60 degrees, but stated that she does not stoop. (*Id.*). She could also squat fully twice and use the stairs at the clinic. (*Id.*). Saleh could not test Herring's ability to climb a ladder. (*Id.*).

Saleh indicated that Herring performed the exercises "as stated above with a pain rating of 4-5/10 at the conclusion," and noted that all this information would "be forwarded to [Herring's] primary care provider for completion of any necessary paperwork." (Tr. 679).

Based on this examination, the ALJ noted that "it appear[ed] that the form completed by Dr. Paulus [was] primarily based on [Herring's] subjective reports [from the Saleh examination], significantly decreasing the probative value of [Paulus's] opinion." (Tr. 19).

I am satisfied that a searching review of the ALJ's decision demonstrates that he complied with the substance of the treating physician rule in evaluating Paulus's opinion. In addition to acknowledging the treating relationship, the ALJ also considered Paulus's objective findings detailed in her May 2016 opinion which, as the ALJ noted, were inconsistent with Paulus's more severe limitations. Specifically, the ALJ pointed to Paulus's report that Herring's pain severity in her neck, lower back, and elbows to thumbs was only a 3/10, and Herring exhibited only "mild tenderness" in her neck and lower back. (Tr. 19, 412).

The ALJ also referenced several of Paulus's treatment notes throughout his decision that showed relatively normal physical and mental findings. For example, at an appointment on March 23, 2016, Paulus assessed Herring's neck and lower back pain as a two, which was being treated with Motrin and Tylenol. (Tr. 654). Herring presented in no acute distress and was comfortable at rest and oriented. (Tr. 17, 655). On examination, Paulus indicated that Herring's gait, spine, bones and joints, and muscle strength were all "normal." (Tr. 655). Herring also denied experiencing depression or anxiety, exhibited no acute focal neurological deficit, and was normal in appearance, with organized clear thought and speech and no disturbance of mood. (*Id.*).

On September 28, 2016, Herring presented to Paulus for follow-up on, among other things, her lower back and neck pain, as well as bilateral thumb pain. (Tr. 814). As the ALJ noted,

8

Herring's lower back pain was "stable" and assessed her pain as zero. (Tr. 17, 814). Paulus indicated that Herring again presented in no acute distress, had "normal" gait, spine, and muscle strength, had no swelling around her thumbs, but did exhibit limited flexion in certain thumb joints, which was "most likely [degenerative joint disease]." (Tr. 815-16). The ALJ also noted that Herring reported that she "never had depression," and that her anxiety was "stable." (Tr. 18, 816).

The ALJ also referenced an April 14, 2017, treatment note in which Herring's lower back pain was still "stable" and assessed her pain as zero. (Tr. 954). Herring again presented in no acute distress, was comfortable at rest, and exhibited "normal" gait, spine, bones and joints, and muscle strength. (Tr. 17, 955). Herring's anxiety continued to be "stable." (Tr. 955).

In addition to Paulus's own treatment notes, the ALJ also contrasted Paulus's opinion with record evidence from other providers. Specifically, the ALJ accurately pointed out that despite foot, back and neck pain, Herring "otherwise frequently revealed 5/5 muscle strength for elbow flexion, wrist flexion, wrist extension, grip, knee extension, and ankle flexion, 2+ reflexes, negative straight leg raise testing, and intact sensation with only mild sensory, strength, and reflect deficits noted sporadically." (Tr. 17 (citing Tr. 278-79, 281, 290-92, 300-01, 343, 363, 386, 389, 539, 637, 655, 770, 782, 955)). The ALJ also noted that Herring's pain was well controlled with medication and that she often presented to treatment provides in no acute distress, which in the ALJ's view "suggest[ed] that [Herring's] pain may not be as severe as alleged." (Tr. 17 (citing Tr. 325, 373, 386, 389, 392-93, 502, 539, 556, 572, 655, 814, 891)).

To be sure, it was within the ALJ's discretion to weigh this evidence as he considered Paulus's opinion. *See, e.g.*, *Jackson v. Berryhill*, 2018 WL 3306193, *5 (W.D.N.Y. 2018) ("In accordance with the regulations, the ALJ considered whether [treating physician's] opinions were consistent with the record as a whole, and he sufficiently described the evidence that he found to

9

contradict her opinions. Moreover, the ALJ was entitled to weight the above evidence against the other record evidence and to resolve any conflicts when evaluating [treating physician's] opinions. Accordingly, the ALJ did not err when he discounted [treating physician's] opinions on this basis.").

Moreover, the ALJ's decision to discount Paulus's opinion because it was based, at least in part, on Herring's subjective complaints was appropriate, particularly where, as here and discussed further below, the ALJ properly evaluated Herring's subjective complaints. *See Jackson*, 2018 WL 3306193 at *5-6 ("the ALJ's credibility determination may influence how he weighs the medical opinions, especially when those opinions are based on the claimant's subjective statements[;] . . . [w]hen the ALJ finds the claimant's allegations not credible, he is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints") (collecting cases).

Even though the ALJ properly discounted this opinion, I note that the ALJ still relied on it and incorporated several limitations in Herring's RFC. Specifically, the ALJ agreed with Paulus that Herring required at sit/stand option at will (Tr. 15, 19, 413), had certain fingering and handling limitations (Tr. 15, 413), and had psychological factors which affected Herring's ability to work (Tr. 15, 414). Therefore, the ALJ clearly relied to some extent on Paulus's opinion, and, as explained above, adequately stated his reasons for discounting other portions of Paulus's opinion. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order) (the ALJ's RFC need not "perfectly correspond" with any of the medical opinions cited in his opinion); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

In my view, then, the ALJ relied on sufficient reasons to discount Paulus's opinion, adequately explained those reasons, and thus, did not run afoul to the treating physician rule in evaluating Paulus's opinion. Remand is therefore not warranted on this basis.

## 2. Opinions of VA Examiners Kristin Clark and Sherry Withiam-Leitch

The ALJ also evaluated foot examinations and corresponding disability benefits questionnaires completed by VA examiners Kristin Clark ("Clark"), MD, on April 25, 2014, and Sherry Withiam-Leitch ("Withiam-Leitch"), MD, on August 29, 2016. (Tr. 19, 266-74, 800-06).

The disability benefits questionnaire filled out by Clark was based on an in-person examination of Herring and Herring's VA medical records. (Tr. 267). Clark evaluated Herring's plantar fasciitis, with which Herring was diagnosed in her right foot in 2004, and in her left foot in 2006. (Tr. 267-68). Clark noted that pain was worse when Herring stood and walked, and the longer she did so, the more she needed to get off her feet to relieve the pain. (Tr. 268).

In Clark's view, this impairment decreased the amount of time Herring could bear weight. (Tr. 269). Clark opined that Herring experienced excess fatigability, pain on movement, pain on weight-bearing, disturbance of locomotion, interference with standing, and lack of endurance in both feet. (Tr. 272). The functional impact was that Herring "ha[d] to sit frequently to relieve pain in feet." (Tr. 274).

The ALJ afforded this opinion "partial weight," noting that Herring "was able to work at substantial gainful activity levels for multiple years with her foot pain." (Tr. 19). The ALJ also accommodated Herring's foot pain by giving Herring a sit/stand option "at will." (Tr. 19).

Withiam-Leitch similarly evaluated Herring for her plantar fasciitis two years later. (Tr. 800-06). Like Clark, Withiam-Leitch's opinion was based on her in-person examination of Herring as well as her review of Herring's VA medical records. (Tr. 801). Unlike Clark's

11

examination, however, Withiam-Leitch only described associated pain in Herring's right foot, perhaps suggesting that the pain in Herring's left foot pain improved. (Tr. 801). Herring described the pain as "stabbing [and] sharp," and detailed that she was unable to run one mile, could lift and carry ten pounds, and could stand for 15 minutes. (Tr. 802).

Withiam-Leitch opined that Herring's right foot pain was "moderately severe," contributed to excess fatigability, pain on movement, pain on weight-bearing, disturbance on locomotion, and interference with standing. (Tr. 804). She also adopted Herring's self-described functional limitations, opining that Herring could not run one mile, could not lift and carry more than ten pounds, and could not stand longer than 15 minutes. (Tr. 806).

The ALJ gave this opinion "little weight," reiterating that Herring was able "to work at substantial gainful activity levels for multiple years with her foot pain." (Tr. 19). Moreover, according the ALJ, Withiam-Leitch's opinion that Herring could only lift ten pounds and stand for 15 minutes was not consistent with Herring's "often noted normal gait and normal strength, and with the extent of her daily activities[.]" (*Id.*).

I find that the ALJ acted within his discretion in discounting these opinions, and adequately explained his reasoning for doing so.

Herring does not characterize Drs. Clark and Withiam-Leitch as treating physicians and therefore the ALJ was not required to provide the same "good reasons" when discounting their opinions as for Paulus's opinion. *See Fabian v. Colvin*, 2015 WL 792065, *7 (N.D.N.Y. 2015) ("There is no such requirement to provide good reasons for the weight afforded to a non-treating physician's opinion."). Still, "the requirement to explain the evaluation of a physician's medical opinion applies to non-treating physicians as well." *Pappas v. Saul*, 414 F. Supp. 3d 657, 675 (S.D.N.Y. 2019) (alterations and citations omitted).

12

Here, while the ALJ's explanation for discounting Clark's 2014 opinion was not a model of clarity, I find that remand is not warranted to reassess Clark's opinion. The ALJ accurately pointed out that Clark worked for roughly ten years with her right foot pain (from the 2004 diagnosis of plantar fasciitis to the alleged onset date in 2014) and for about eight years with her left foot pain prior to claiming disability as a result of this impairment, among other impairments. In my view, this is certainly a relevant consideration for the ALJ's assessment of whether Herring's plantar fasciitis was a disabling condition.

In any event, the ALJ accommodated for Clark's opined functional limitation by including a sit/stand option "at will" in the RFC. (Tr. 15, 19, 274). In other words, despite affording Clark's opinion "partial weight," the ALJ incorporated Clark's functional limitations into the RFC. Clark's opinion, then, would not change the RFC even if it was afforded more weight, and remand thus is not warranted to reassess Clark's opinion. *See Frazer v. Comm'r of Soc. Sec.*, 2018 WL 1033286, *6 (N.D.N.Y. 2018) ("Failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome.").

The ALJ similarly acted within his discretion in discounting Withiam-Leitch's opinion – that Herring could only lift 10 pounds and stand for 15 minutes – based, in part, on the fact that Herring was able to work for so long with her plantar fasciitis. (Tr. 19). In addition, though, the ALJ discounted the opinion based on Herring's frequently reported normal gait and strength, detailed above, and the extent of Herring's daily activities.

While Herring contends that the ALJ "misrepresent[ed]" these activities of daily living (Dkt. # 7 at 19), I disagree. The ALJ accurately recited Herring's own statements of her daily activities, including that she lived alone, was "able to prepare complete meals, perform laundry once per week, wash dishes, vacuum one room at a time, mow her lawn for 30 minutes at a time,

13

shop for groceries, and drive a car." (Tr. 18 (citing 191-204, 219-226)). The ALJ also noted that at various times throughout the treatment notes, Herring reported to providers that she could "walk her dog one-half mile at a time, use stairs at home, carry groceries in the house, walk around the grocery store, and vacuum one room at a time" (*id.* (citing Tr. 688)), and at other times reported that she had "no issues with activities of daily living or chores and stated that she was fully independent" (*id.* (citing Tr. 287, 297, 328, 433, 669, 839)). To the extent Herring's reports of these activities varied or were inconsistent, the ALJ was entitled to resolve those inconsistencies.

In short, I find that the ALJ properly weighed and considered the three opinions discussed above, and adequately explained his reasons to discount the opinions. Remand is thus not warranted for the ALJ to reassess any of these opinions.

### B. The ALJ Did Not Formulate the RFC Without a Medical Opinion

I am similarly unpersuaded by Herring's related argument that the ALJ rejected all the medical opinions and "formulated an RFC without any medical opinion support." (Dkt. # 7 at 19-20). "An ALJ does not necessarily 'reject' opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evidence that the ALJ's RFC determination incorporates limitations contained in that opinion." *Beckles v. Comm'r of Soc. Sec.*, 2019 WL 4140936, *4 (W.D.N.Y. 2019) (collecting cases and dismissing plaintiff's argument that ALJ rejected doctor's opinion because the ALJ afforded the opinion "partial weight"). "Irrespective of the terminology used by the ALJ, whether it by 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ incorporates or accounts for any of the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence." *Id.* at *4 n.5.

Here, as explained above, and contrary to Herring's argument, the ALJ credited and incorporated several of the limitations opined by Paulus and Clark in determining the RFC. It is clear, then, that the ALJ neither fully rejected these opinions, nor created an evidentiary gap in discounting them. Under these circumstances, I am not convinced that the ALJ rendered an RFC based upon his lay interpretation of the evidence. Remand is thus not required on this basis.

**C. The ALJ Properly Evaluated Herring's Subjective Complaints**

I turn next to Herring's argument that the ALJ erred in evaluating Herring's subjective complaints, particularly because, in Herring's view, the ALJ failed to acknowledge her "strong work history." (Dkt. # 7 at 21-23). I disagree with this contention.

An ALJ's analysis of such complaints should reflect a two-step process. *See* 20 C.F.R. § 404.1529[4]; *see also* Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, *3-4 (Oct. 25, 2017). First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could reasonably be expected to produce the claimant's relevant symptom. *See* 20 C.F.R. § 404.1529(b). Next, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which those symptoms limit a claimant's ability to perform work-related activities. *See id.* at § 404.1529(c).

In making this determination, the ALJ must consider "all of the available evidence from [a claimant's] medical sources and nonmedical sources" about how the symptoms affect the claimant. *Id.* at § 404.1529(c)(1). The ALJ will also consider factors relevant to a claimant's symptoms, such as:

---

[4] These regulations were amended effective March 27, 2017, and apply to disability decisions made on or after March 28, 2016. *See* SSR 16-3P, 2017 WL 5180304 at *1. This means that the amended regulations were in effect and apply to the ALJ's decision here, which was rendered on November 8, 2017. (Tr. 22). As other courts have noted, "[t]he evaluation of symptoms outlined in these regulations was previously referred to as a 'credibility' assessment[,]" but that "[r]ecent SSA rulings have clarified that the sub-regulatory policy will no longer use the term 'credibility' because 'subjective symptom evaluation is not an examination of an individual's character." *Thornton v. Comm'r of Soc. Sec.*, 2020 WL 622889, *3 n.2 (W.D.N.Y. 2020) (quoting 16-3P, 2017 WL 5180304 at *1).

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate [her] pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of [her] pain or other symptoms; (6) any measures the claimant uses or has used to relieve [her] pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* at § 404.1529(c)(3)(i)-(vii).

Where the claimant's symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ will determine that such allegations of symptoms "diminish [the claimant's] capacity for basic work activities" to the extent alleged by the claimant. *Id*. at § 404.1529(c)(4). Yet where the claimant's "statements about the intensity, persistence, and limiting effect of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the [claimant's] symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively[.]" SSR 16-3P, 2017 WL 5180304 at *8. These findings are "entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotations omitted).

Here, the ALJ applied this two-step analysis. The ALJ found that while Herring's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 16).

In doing so, the ALJ appropriately considered the record as a whole, including the medical evidence discussed in detail above, and balanced this record against Herring's subjective

16

statements of her symptoms. As discussed above, the ALJ also considered Herring's alleged activities of daily living, and the purported affect her impairments had on these activities. These were appropriate considerations in evaluating Herring's subjective complaints.

Contrary to Herring's specific argument on this point, the ALJ, in fact, acknowledged and considered Herring's work history in his determination. Specifically, the ALJ pointed out that Herring received a pension (Tr. 12), and that she worked at substantial gainful activity levels for multiple years (Tr. 16 (citing Herring's earnings records)). I am satisfied, then, that the ALJ was aware of Herring's work history and factored it, along with several other considerations, into his disability determination and analysis of Herring's subjective complaints. *See, e.g.*, *Campbell v. Astrue*, 465 Fed. Appx. 4, 7 (2d Cir. 2012) (summary order) ("Although it is true that a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility.") (quotations omitted); *Morrisson v. Comm'r of Soc. Sec.*, 2020 WL 812926, *10 (W.D.N.Y. 2020) (finding that ALJ did not overlook claimant's work history where the ALJ considered, among other things, claimant's "earning records"; "[h]aving considered [p]laintiff's work history alongside the other evidence in the record, the [c]ourt finds it was not contrary to law for the ALJ to decline to accord [p]laintiff's testimony 'substantial credibility'").

Accordingly, the ALJ's evaluation of Herring's subjective complaints is supported by substantial evidence and is not "patently unreasonable." This is thus not a cause for remand.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence and was not based on legal error. Herring's motion for summary judgment (Dkt. # 6) is **DENIED**, the Commissioner's cross motion for judgment on the pleadings (Dkt. # 10) is **GRANTED**, and the Commissioner's decision that Herring is not disabled is affirmed in its

entirety. Herring's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

       IT IS SO ORDERED.

                                                 _____
                                                          DAVID G. LARIMER
                                              United States District Judge

Dated:  Rochester, New York
         March 5, 2020.